## PACK vs. CRAWFORD et al.

1. TAX SALE: *For a larger penalty than the law imposes, void.*

    Under the provisions of the revenue act of July 23, 1868, which was continued in force for the purpose of collecting the taxes of that year, twenty-five per cent. was the penalty imposed for the nonpayment of taxes on land, and a sale for a larger penalty was void.

2. TAX DEED: *When void.*

    Under the provisions of the revenue act of 1868, and the act of February, 1869, supplemental thereto, a tax collector was required to sell each tract of land separately, and a tax deed which shows on its face a violation of this provision is void.

3.—*Cannot be validated by introducing the recitals.*

    Where, in such a case, the tax deed is relied upon as evidence of title, its invalidity cannot be cured by evidence *aliunde*, contradicting the recitals contained in it.

4. ATTORNEY: *His right to purchase client's land at tax sale.*

    The mere fact that a purchaser of land at a tax sale was, during the life of the deceased owner, his attorney in some suits, did not cast upon him the duty of paying the taxes or redeeming the land, or affect his right to purchase.

APPEAL from *Saline* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*Garland,* for appellant.

*J. M. Smith, contra.*

ENGLISH, C. J. The original bill in this case was filed in the Saline circuit court, by Wm. M. Pack, as administrator of Leonidas H. Bean, deceased, against the widow and heirs at ꞁaw of his intestate. The object of the bill was to procure an order of court to sell the W. 1-2 of the N. W. 1-4 of sec. 13, and the E. 1-2 of the N. E. 1-4 of sec. 14, T. 1 N., R. 18 W., situated in Saline county, to pay debts probated against the estate of Bean, and of which he was alleged to be the owner at the time he died in Texas.

The minor heirs of Bean filed a cross-bill, in which they claimed title to the lands in themselves, and other heirs of their maternal grandfather; made Crawford and Smith defendants, and prayed for partition of the lands, etc.

Crawford and Smith answered, and also filed a cross-bill, in which they alleged that Crawford purchased the lands at tax sale, obtained a deed, and conveyed an undivided half of the lands to Smith. In the answers to this cross-bill, the tax title was assailed for alleged fraud and illegality.

The court decreed the lands to Crawford and Smith, subject to the right of some of the minor parties to redeem two-sevenths of them; and Pack, as administrator of Bean, appealed. The tax deed made an exhibit to the cross-bill of Crawford and Smith, and relied on by them for title, is in substance as follows:

The deed was executed by the county clerk to Wm. A. Crawford, bears date 25th of September, 1871, and recites that, "Whereas, on the 6th day of October, 1868, E. H. Vance jr., assessor in and for the county of Saline, did file in the clerk's office of said county an assessment of all the lands and town lots in said county, in manner and form as provided by law. And whereas, on the 1st day of February, 1869, James A. Mills, clerk of said county, did deliver to the collector of said county the tax books for the year 1868, embracing all of said lands and town lots, with the amount of taxes levied duly extended thereon, together with the warrant for the collection of said taxes as prescribed by law.

"And whereas, the following tracts of land, viz: The west half of the northwest quarter of section thirteen, and the east half of the northeast quarter of section fourteen, in township one north, of range eighteen west, containing 160 acres, lying in said county, were entered, listed and assessed for taxation, in the name of Howald & Bean, for the year 1868, and

neither the owner, nor any person or persons for said owners, having paid the taxes levied as aforesaid, amounting to the sum of twenty-three and $\frac{42}{100}$ dollars. Wherefore, William M. Pack, as such collector, did, on the 7th day of June, 1869, return said tracts of land as delinquent; said delinquent lands were duly advertised, and notice given by publication as provided by law, that the collector would sell at public auction at the court house door in said county, on Monday, the 20th day of August, 1869, the said tracts of land for the taxes, together with 50 per cent. penalty, and costs thereon; and said collector did, on the date last mentioned, proceed to sell said lands; whereupon William A. Crawford bid, and offered for said lands, the sum of twenty-five dollars, and having paid to the collector the said sum of twenty-five dollars, and the term of two years having expired since the day of sale, and the said lands being unredeemed, and the certificate of purchase being now produced by said William A. Crawford, he now demands a deed for said lands. Now, know ye, that I, James A. Mills, clerk as aforesaid, pursuant to the provisions of sec. 129, of an act regulating the assessment and collection of the revenue of the state of Arkansas, approved March 25, 1871, and in consideration of the sum of twenty-five dollars, paid to the collector as aforesaid, do hereby grant, bargain and sell unto said William A. Crawford, his heirs and assigns, the before described tracts of land, etc."

I. It seems from the face of the deed that the lands were advertised and sold for the taxes, and fifty per cent. penalty thereon for nonpayment. By sec. 44 of the act approved July 23, 1868, entitled "An act to assess and collect taxes, and for other purposes" (Acts of 1868, p. 273), a penalty of twenty-five per cent. was imposed for the nonpayment of taxes assessed on real property within the time fixed by the act. So by sec. 10 of the act of February 19, 1869, entitled "An act

to aid in assessing and collecting taxes for the year 1868," Acts of 1868-9, p. 49, it was provided that if the taxes on real property should not be paid within the time prescribed by sec. 8 of the act, they should be deemed delinquent, and a penalty of twenty-five per cent. added thereto.

The lands in question were sold on August 2, 1869, for the taxes of 1868. It may be that the penalty of fifty per cent. was imposed under some provision of the act of April 8, 1869, entitled "An act regulating the assessment and collection of revenue," which was not published in the pamphlet acts of 1868-9, but in a separate pamphlet. But sec. 159 of this act, being the last section, declares : " That an act entitled an act to assess and collect taxes, and for other purposes, approved July 23, 1868, and all acts supplemental thereto, are hereby repealed, but shall remain in full force and effect for the purpose of making the collection of taxes for the year 1868." We have been able to find no act imposing a penalty of 50 per cent. for the nonpayment of taxes of 1868 on lands. The sale for a larger penalty than was imposed by law was illegal and invalid. *Huse v. Merriman et al.*, 2 Greenl. (Me.), 376; Blackw. on Tax Titles, p. 192, and cases cited ; *Doe on dem., etc., v. McQuilkin*, 8 Blackf., 335; *McQuilkin v. Doe on dem. Stoddard*, id., 581 ; *Mason v. Roe, etc.*, 5 id., 98 ; *Scott et al. v. Watkins*, 22 id., 556.

II. It also appears from the face of the deed that the collector sold the two tracts of land together, and not separately.

Sec. 78 of the act of July 23, 1868, required the auditor to make out and forward to the county clerk a complete list of all lands subject to taxation in their respective counties ; the list to show in whose name the original entry or purchase was made, the date of the entry, a description of each tract or parcel arranged in each township according to the numerical order of the sections.

The auditor was also required to furnish the clerks with assessment books, tax books, plats, etc. Id., sec. 79. Section 31 of the same act required the clerk of each county to make out and deliver to the assessor an assessment roll of lands and town lots within his county, to be compiled from the books in his office, containing a description of each tract and lot of real property in his county subject to taxation, and the number of acres or quantity of land contained in each tract, except town or city lots, with the name of the owner thereof, if known ; and in making out such assessment roll, to place each separate parcel of land in each township, according to the numerical order of the sections, and each town or city lot according to the numerical order of the lots and blocks, etc. Each assessor was required to ascertain and set down opposite each tract of land in the assessment roll furnished him by the clerk, the value thereof, etc. Id., sec. 7, 25, 26. The lands in question were assessed under the provisions of this act. The tax deed shows that the assessor of Saline county returned his list October 6, 1868, for that year. The collector was required to offer for sale at public auction, separately, each tract of land or town lot contained in the advertisement, etc., on which the taxes, penalty, and costs had not been paid. Id., sec. 50. So by the supplemental act of February 19, 1869.

By sec. 50 of the act of July 23, 1868, the person offering at the sale to pay the taxes, penalty, and costs charged on a tract or lot for the least quantity thereof, was to be the purchaser of such quantity, as under former statutes. But by the supplemental act of February 19, 1869, when the proceeds of the sale of one or more tracts taxed to any person were sufficient to pay the taxes, penalty, costs, etc., charged against the delinquent lands of any such person, and he had still other tracts more than necessary to pay such taxes, etc., the excess was not to be sold. Sec. 16, etc.

In the case before us, there were two half quarters, one of them in sec. 13, and the other in sec. 14. They were clearly two distinct tracts within the meaning of the acts above referred to ; and should have been offered for sale separately, and not together. And it appearing from the face of the deed that they were sold together, the sale was illegal and invalid, as held in *Pettus and Glenn v. Wallace.* The deposition of the appellant Pack was taken on the part of parties claiming adversely to Crawford and Smith, and seems to have been made upon the hearing without objection. He deposed, in substance, that he was sheriff at the time the lands were sold, and made the sale. That Crawford bought the lands for $25. That he paid $12 for one tract, and $13 for the other. That the taxes, penalty, and costs, on each tract was $11.71, to the best of his recollection. From this deposition, it would seem that the tracts were sold separately. If they were so in fact sold, the clerk might properly embrace both tracts in one deed, but he should have shown by the recitals of the deed that they were separately sold, and not have recited, as he did, that they were sold together, for the gross amount of taxes, etc., charged on both tracts. Sec. 22, act of February 19, 1869. *Bonnell v. Roane,* 20 Ark., 122.

In *Walker v. Moore,* 2 Dillon, 256, which was an action of ejectment for lots purchased at tax sale, it was held, that a tax deed, showing by its recitals that two or more separate town lots were sold, *en masse,* for a gross sum, was void on its face, and that evidence to contradict the recitals, and show that the lots were sold separately, was inadmissible.

. Possibly the clerk, in making the deed, made a mistake in reciting the penalty imposed for the nonpayment of the taxes, as well as in reciting that the tracts were sold *en masse.* The deed recites that the " taxes," amounted to $23.42 on the tracts, and that they were advertised and sold for the taxes, together with 50 per cent. penalty and costs thereon."

Pack deposed that the taxes, penalty and costs on each tract were $11.71, which added, make $23.42, just the sum that the deed recited the taxes to be.

Whether, where such recitals are, in fact, mere mistakes of the officer drafting the deed, they can be contradicted by other evidence, on a bill properly framed and brought for the purpose of correcting the mistakes, we need not decide in this case. The crossbill of Crawford and Smith was not framed or brought for that purpose. They set up the tax sale and deed, by general averments, as regular and valid, and rely on the deed as their title to the lands; and we have held above, that upon its face it is invalid, showing, as it does, an illegal sale.

There was an attempt by the pleadings and evidence on the part of the appellant, to show that Smith, who purchased an undivided half of the lands of Crawford, was the attorney of Bean, and under obligations to redeem the lands from the tax sale, and that other parties interested in the lands, relying upon his doing so, let the time for redemption run out.

The allegations on this subject were denied by Crawford and Smith, and we think the weight of the evidence, as far as it appears of record, sustained their answer. Smith was the attorney of Bean in some cases during his lifetime; but was paid no fees. None of the parties interested in the lands made him an agent to pay the taxes nor was he furnished with any means to pay them or redeem the lands, nor does it appear that he undertook to do so.

Pack knew of the sale of the lands for taxes, because he made it. He became the administrator of Bean, October 1, 1870 and before the tax deed was made to Crawford. It appears that the lands were improved, valuable, and that, claiming that they belonged to the estate of his intestate, he had control of the rents and profits, and it was his duty to redeem the lands from the tax sale. He did not, therefore,

stand in a very good attitude to impute neglect or bad faith to Smith. Any of the parties interested in the lands could have gone to the clerk and redeemed them at any time before the time for redemption expired. They failed to do so, or to furnish, or to offer to furnish Smith with means to redeem them.

The decree of the court below must be reversed, because the court decreed the lands to Crawford and Smith, upon a tax deed appearing on its face to be invalid, and the cause remanded for such further proceedings as the parties may think proper to take in the case, not inconsistent with law, and this opinion.